787 P.2d 1074

**Richard M. ROMLEY, Maricopa County Attorney, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Barry G. Silverman, a judge thereof, Respondent Judge,**

**JV–111506, Real Party In Interest.**

**No. 1 CA–SA 89–086.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 14, 1989.

Review Denied March 20, 1990.\*

---

\* Cameron, J., of the Supreme Court, voted to grant review.

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels, Deputy County Atty., Phoenix, for petitioner.

Dean W. Trebesch, Maricopa County Public Defender by Richard Salonick and Ellen Edge Katz, Deputy Public Defenders, Phoenix, for real party in interest.

## OPINION

GERBER, Judge.

This is a special action. We previously accepted jurisdiction and granted relief, stating that an opinion would follow.

The essential facts are as follows. The Maricopa County Attorney's Office (petitioner) filed charges against the juvenile real party in interest. In April, 1989, a transfer hearing was held. The county attorney sought to have the court consider a psychological report prepared pursuant to the court's own motion. The juvenile objected to the court considering the report. The juvenile court ruled that the psychological report was hearsay and not admissible in the transfer hearing without the author of the report testifying to establish foundation.

The Arizona Rules of Procedure for Juvenile Court do not require such a result. Juv.Rule 12 read in conjunction with Juv. Rule 14 means that neither party is required to introduce the transfer report or the psychological report in evidence. These reports are the juvenile court's *own* records properly before the court as soon as they are received into the court file. A close reading of Rules 12(b) and 14 shows why this is so.

Juv.Rule 12(b) requires that when a transfer motion is received, "the juvenile probation officer shall conduct a transfer investigation and make a written report specifically addressing those issues referred to in Rule 14(c)" of the Arizona Rules of Procedure for Juvenile Court. The report is prepared by the juvenile court through its agent, the juvenile probation officer, for the juvenile court's own use. The original report is placed into the "Red Social File", and copies are provided to counsel five days before the transfer hearing pursuant to Juv.Rule 12(b). The transfer report is placed in the juvenile court's file because Juv.Rule 14(c) requires the court to consider the eight listed factors mandated by Juv.Rule 12(b) in that report. If the trial judge's ruling is correct, the juvenile court finds itself in a dilemma: it cannot require either side to call witnesses or to present evidence on any transfer issue, yet it must consider the factors listed in Rule 12(b). To avoid paralysis the juvenile court must use the report mandated by

Juv.Rule 12 to obtain its information concerning those factors.

■ Rule 14(a) does require an "evidentiary hearing". However, that requirement does not mean that the petitioner must present live witnesses or place reports into evidence under the Rules of Evidence. The petitioner may choose to rest its case on the information in the reports already before the court. Alternatively, the petitioner or any other party may choose to call witnesses to supplement or attack the reports. The "evidentiary hearing" requirement is satisfied when the state rests its case on the reports in the court file and any further testimony offered by the parties at their option.

■ The issue becomes clearer when Juv.Rule 12(c) is considered. Juv.Rule 12(c) provides that the court on its own motion or at any party's request may order a "mental and/or physical examination of the child" in addition to the transfer report required by Juv.Rule 12(b). In the instant case, the juvenile court ordered a psychological examination and a report pursuant to Juv.Rule 12(c). That rule requires that a copy of such examination "be given to the juvenile probation officer to accompany the report of the transfer investigation." The trial judge's ruling confirms that "the purpose of such information is to assist the Court—not the prosecution." Juv.Rule 12(c) would not allow the juvenile court to order such an examination to assist its determination if the juvenile court were foreclosed from considering its results. It would be an anomaly if the juvenile court could not consider the reports it orders to make its mandatory Rule 14(c) inquiry. Nowhere in Juv.Rules 12, 13, or 14 is there any requirement that these reports be formally admitted in evidence before the court may consider them. Pursuant to Juv.Rule 12, these reports are neither "State's evidence" nor "defense evidence". They are not, strictly speaking, partisan "evidence" at all under the Rules of Evidence but instead are the juvenile court's own records prepared by its own agents for its own use.

Case law in this area is admittedly sparse. Analogies to the present situation, however, can be found. In *State v. Stanhope*, 139 Ariz. 88, 676 P.2d 1146 (App. 1984), the court of appeals considered a defendant's allegation that a presentence report prepared by the probation officer and a mental health evaluation report prepared by the court clinic officer were "biased." The appellate court pointed out that the reports contained information which the trial court should consider:

> The appellant also complains that the investigating probation officer and the mental health expert gave their own subjective assessments of the appellant. This is the business of the court clinic officer. It is the very purpose of such an evaluation since it is a professional, expert opinion. The same can be said to a lesser degree of the probation officer, although that report should be basically objective. It is the task of the sentencing judge to weigh all the material in the report.

139 Ariz. at 94, 676 P.2d 1152.

In *In Matter of Appeal in Maricopa County, Juvenile Action J–94518*, 138 Ariz. 287, 674 P.2d 841 (1983), the Arizona Supreme Court considered a juvenile's appeal from the juvenile court's transfer order. The juvenile attacked the transfer decision, stressing that "the State did not present any witnesses, instead relying on the minor's 'social file'", which contained "a history of the minor's offenses, reports by probation officers and psychologists, and corrective action taken for each offense." The Arizona Supreme Court held that the trial judge properly based his decision not only on the seriousness of the current offense but also on his review of the juvenile's file. Notably, the court did not require the state to present witnesses on the transfer issue; it upheld the juvenile court's review of the "social file" without live testimony.

The transfer report and psychological report in the instant transfer case are analogous to presentence reports in criminal cases. They are prepared pursuant to rule and court order by persons employed by or under contract to the juvenile court for the juvenile court's own use.

The juvenile court must be able to consider the reports so that its decision pursuant to Juv.Rule 14 is fully informed. These reports do not need to be introduced in evidence by either party; because they are the court's own records in its own file, the juvenile court may consider the reports without foundational witnesses.

HAIRE, P.J., and EUBANK, J., concur.