788 P.2d 1235

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–117258 (Formerly Pinal County No. J–2358).**

No. 1 CA–JV 89–019.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 19, 1989.

Review Denied April 17, 1990.

Richard M. Romley, Maricopa Co. Atty., by Albert H. Gavit, Deputy Co. Atty., Phoenix, for appellee.

Robert C. Brown, Mesa, for appellant.

OPINION

VOSS, Presiding Judge.

The following issues are presented for our consideration:

(1) whether placement of the juvenile in a residential treatment program was appropriate;

(2) whether Pinal County properly transferred the juvenile's case to Maricopa County; and,

(3) whether this court must conduct an *Anders* review of the juvenile's record of proceedings pertaining to the delinquency petition.

The facts necessary for resolution of this appeal are as follows. A delinquency petition was filed in Pinal County alleging that the juvenile committed sexual conduct with a minor, sexual assault on a minor and child molestation. The juvenile admitted to child molestation. The court then adjudged the juvenile delinquent and ordered the case transferred to Maricopa County for disposition. At the disposition hearing in Maricopa County, the court placed the juvenile on probation under the protective supervision of a juvenile probation officer with physical placement in New Foundation, a residential treatment center.

## PLACEMENT

■ The juvenile correctly argues that the right of a parent to the custody of his child is natural and legal and a court should not remove a child from his parents except for the gravest of reasons. *Anguis v. Superior Court*, 6 Ariz.App. 68, 429 P.2d 702 (1967). The juvenile states that since his mother was willing to have him live at home the court improperly removed him from the custody of his mother, and placed him in New Foundation. A court has wide discretion in ordering proper disposition of a juvenile who has been adjudicated delinquent and such disposition will not be disturbed on appeal absent a clear abuse of discretion. A.R.S. § 8–241(A)(2); *In the Matter of the Appeal in Maricopa County Juvenile Action No. J–86715*, 122 Ariz. 300, 594 P.2d 554 (App.1979); *In the Matter of the Appeal in Maricopa County Juvenile Action No. J–78070*, 24 Ariz.App. 248, 537 P.2d 976 (1975). Although the mother stated she was willing to have the juvenile live at home pending the disposition hearing, she was ambivalent concerning permanent placement because the juve-

nile was disobedient, disrespectful, and uncontrollable. The probation officer's report and the psychological evaluation both recommended that the juvenile's needs would be best served by placement in a residential treatment center. Therefore, the court did not abuse its discretion in placing the juvenile in New Foundation.

## VENUE

■ The juvenile next argues it was improper for the court in Pinal County to transfer his case to Maricopa County. The juvenile contends Pinal County had more information regarding his case and was therefore in a better position to make a proper disposition.

A.R.S. § 8–206 provides that venue in juvenile proceedings shall be determined by the county of residence of the child or the county where the alleged delinquency obtains or is committed. Though the juvenile was temporarily residing in Pinal County when the incident occurred, the juvenile's county of residence was Maricopa. Furthermore, venue is a privilege that permits one in whose favor it runs to have a case tried at a convenient place; it is personal and unless asserted may be waived. *Sil–Flo Corp. v. Bowen*, 98 Ariz. 77, 402 P.2d 22 (1965); *Yuma County v. Keddie*, 132 Ariz. 552, 647 P.2d 1150 (1982). The juvenile failed to object to the change of venue either when his case was transferred or during his court appearances in Maricopa County. The juvenile has therefore waived his objections to the venue change. We find no error in the transfer of the case to Maricopa County.

## ANDERS

■ The final issue is whether this court must review the record of proceedings for fundamental error pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The juvenile has specifically requested that we do so.

This court has held that Rule 25(b), Rules of Procedure for the Juvenile Court[1], pro-

---

**1.** Rule 25(b) provides: An appeal may be taken only by filing with the Clerk of the Superior

Court a written notice of appeal which specifies the party taking the appeal and designates the

hibits juvenile *Anders* appeals. *In the Matter of the Appeal in Maricopa County Juvenile No. J–84536–S*, 126 Ariz. 546, 617 P.2d 54 (App.1979). The court in *Juvenile No. J–84536–S* held that juvenile *Anders* appeals are prohibited because Rule 25(b) requires that the juvenile articulate a concise statement of the grounds for appeal when filing an appeal. Since *Anders* appeals state that no error has been found, they do not comply with the requirements of Rule 25(b).[2] The court held that the resulting disparate treatment between adults and juveniles from such an interpretation of Rule 25(b) did not violate the equal protection clause. We disagree with both the analysis and holding of the court in *Juvenile No. J–84536–S*.

Rule 25(b) does require specificity. However, Rule 31.13(c)(1)(iv), Rules of Criminal Procedure,[3] which governs in proceedings against adults, also requires specificity but has not been construed to proscribe an adult *Anders* appeal. Both rules were promulgated after *Anders* was decided, presumably with full knowledge of the holding in that case. *See State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). It is therefore more logical to conclude that the rules were intended to require specificity in an "issue" appeal, not to prohibit either juvenile or adult *Anders* appeals.

Adherence to this court's previous interpretation of Rule 25(b) effectively cuts off the first appeal right of juveniles who are unable to recite a concise statement of the grounds for appeal. The Supreme Court in *Anders* established the principle that the final determination that no meritorious appellate grounds exist is for the court and

not for defendant's appointed counsel to make. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. If we were to determine that Rule 25(b) precludes the filing of an appeal where a juvenile's appointed counsel determines that he is unable to provide "a concise statement of the grounds for appeal" because the appeal is, in counsel's opinion, meritless, Rule 25(b) would have essentially the same effect as the no merit letter procedure condemned in *Anders*.

█ Assuming Rule 25(b) is intended to prohibit *Anders* appeals, we conclude that equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States mandates that juveniles be permitted to file *Anders* appeals where there has been a finding of delinquency resulting from underlying criminal activity.[4]

A juvenile found delinquent because of underlying criminal activity is entitled to the same equal protection guarantees as an adult. Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone. *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *cf. Juvenile No. 111701*, 163 Ariz. 147, 786 P.2d 998 (where disparate treatment of juveniles and adults regarding initial appearances was held to violate the juvenile's equal protection guarantees).

The equal protection clause of the Fourteenth Amendment does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification. *In the Mat-*

---

particular matter appealed from, together with a *concise statement* of the grounds for the appeal supported by a memorandum of authorities.... (Emphasis added).

**2.** This court later held that the failure to provide the specificity required by Rule 25(b) is not jurisdictional but may, depending on the circumstances, constitute the basis for dismissal of the appeal in the exercise of the court's discretion. *In the Matter of the Appeal in Yuma County Juvenile Action Nos. J–81–339 and J–81–340*, 140 Ariz. 378, 682 P.2d 6 (App.1984).

**3.** Rule 31.13(c)(1)(iv) provides: A *concise argument* containing the contention of the party, the

reasons therefor, and necessary supporting citations. (Emphasis added).

**4.** The equal protection clause is aimed at all official actions, not just those of the legislature, *In re Matter of Maricopa County Juvenile 111701*, 163 Ariz. 147, 150–151 n. 4, 786 P.2d 998, 1001–1002 n. 4 (1989), and this court is authorized to determine the validity and constitutionality of rules promulgated by the Arizona Supreme Court. *State v. Meek*, 9 Ariz.App. 149, 450 P.2d 115, *cert. denied*, 396 U.S. 847, 90 S.Ct. 73, 24 L.Ed.2d 98 (1969).

*ter of the Appeal in Maricopa County Juvenile Action No. J–72804,* 18 Ariz.App. 560, 504 P.2d 501 (1972). Three tests are available to determine the constitutionality of a statute under an equal protection analysis: strict scrutiny, substantial relationship, and rational basis. When a statute imposes a burden on a suspect classification or impacts a fundamental right, a strict scrutiny standard is applied to determine whether the law serves a compelling government interest. *Bryant v. Continental Conveyor Equipment Co., Inc.,* 156 Ariz. 193, 751 P.2d 509 (1988). If the law involves a classification based on gender or illegitmacy, a substantial relationship standard is applied to determine whether the law meets an important government interest. *Id.* The rational basis test is not met if the classification rests on grounds wholly irrelevant to the achievement of the state's objectives. *Id.*

We need not decide whether Rule 25(b) impinges upon a fundamental right, suspect classification, or discriminates based on gender or illegitmacy because we find that the rule fails to withstand even the most minimum level of scrutiny—rational basis.

In different contexts, our supreme court has found that disparate treatment of juveniles is rationally related to a legitimate state concern. *See Maricopa County Juvenile J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979), *cert. denied* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980) (sentence for juvenile can exceed that which can be imposed on adult for conviction of the same crime); *Maricopa County Juvenile J–81405–S,* 122 Ariz. 252, 594 P.2d 506 (1979) (filing of a delinquency petition need not be supported by probable cause).

However correct those cases may be in context, an adjudication hearing on the issue of delinquency is a "proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such determination and the deprivation of liberty for many years." *Breed v. Jones,* 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 355

(1975). The effect of the juvenile civil proceeding in many instances is the same as that of the adult criminal proceeding—denial of freedom. Indeed the length of confinement of a juvenile may exceed that of an adult for commission of the same offense. Furthermore, an adjudication of delinquency may be utilized for limited purposes by a sentencing court in subsequent adult criminal proceedings. *State v. Levitt,* 155 Ariz. 446, 747 P.2d 607 (App.1987); *State v. Corral,* 21 Ariz.App. 520, 521 P.2d 151 (1974). The proper appellate review of juvenile adjudications, if not of equal importance to the adjudication hearing, is nonetheless of great importance. An improper adjudication, one containing fundamental error, may impact the juvenile well into adult life.

The very essence of the lack of maturity of the juvenile would seem to argue for—not against—an *Anders* appeal. The state's objective is to protect the immature juvenile—to act as custodian in place of the parents when the juvenile has been adjudged delinquent. *Gault,* 387 U.S. at 17, 87 S.Ct. at 1438. The state, in its post-adjudication role, has a duty to preserve and promote the interest of juveniles. The *Anders* appeal, by assuring that no fundamental error occurred during the adjudication, furthers the state's interest.

Affording a juvenile an *Anders* appeal in no way impinges upon the rehabilitative purposes of juvenile law. Indeed, given the fact that adults are entitled to an *Anders* appeal, we can think of no reason as to why juveniles should not be entitled to the same.

Since we find no rational basis for the disparity in treatment afforded juveniles pursuant to Rule 25(b), we hold that Rule 25(b) as it has been interpreted to prohibit juvenile *Anders* appeals violates the juvenile's Fourteenth Amendment right to equal protection. Our ruling is narrow as it affects Rule 25(b). To the extent the rule prohibits a juvenile an *Anders* appeal, it is constitutionally infirm. The rule however remains viable in an "issue" appeal and requires specificity.

Upon our *Anders* review of the record of proceedings pertaining to the delinquency petition, we find there is no fundamental error and affirm the juvenile court's disposition.

JACOBSON and KLEINSCHMIDT, JJ., concur.